**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| ALVIRO PAX BALLANCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   Case No. 15-CV-0205-JED-PJC |
| CHUCK JORDAN, Police Chief, | ) |
| JASON BELL, Tulsa Police Officer, | ) |
| WES PHELPS, Tulsa Police Officer, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This is a 42 U.S.C. § 1983 civil rights action filed by Plaintiff Alviro Ballance. When Plaintiff filed his *pro se* complaint (Doc. 2), he was in custody of the Oklahoma Department of Corrections. However, Plaintiff has since been released from custody (*see* Doc. 12). In response to Plaintiff's complaint, Defendants Chuck Jordan, Jason Bell, and Wes Phelps filed a Special Report (Doc. 20), additional exhibits (Doc. 21), and a motion to dismiss (Doc. 23). Plaintiff filed a response to Defendants' motion (Doc. 28). The Court granted the motion to dismiss as to the constitutional grounds specifically identified in the complaint, liberally construed the complaint as alleging a violation of Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, and notified the parties that the motion to dismiss would be treated as a motion for summary judgment (Doc. 31). Thereafter, Defendants filed additional evidentiary materials in support of the motion for summary judgment (Doc. 32). Plaintiff also filed additional exhibits (Docs. 36-38). For the reasons discussed below, the Court grants the motion for summary judgment in part and denies the motion in part.

## BACKGROUND

In his complaint (Doc. 2), Plaintiff contends that Defendants violated his constitutional rights when Defendant Bell subjected him to an excessive use of force while transporting him to the David L. Moss Criminal Justice Center (DLM), the facility that serves as the Tulsa County Jail. Specifically, Plaintiff contends that Defendant Bell "told me I was a 'woman beater'" and "began striking me with a closed first, three to four times in my mouth" (*id.* at 3). Plaintiff alleges that Defendant Bell also "struck me again with a closed fist in my eye. . . . and took me out of his Police Vehicle, slamming me onto the ground" and "twisted my ankle with his hand" (*id.*). In his request for relief, Plaintiff asks for the following:

a) A declaration that the acts described herein violated Plaintiff's rights under the Constitution of the United States;

b) A preliminary and permanent injunction ordering Defendant Jason Bell be prevented from being employed as a Police Officer, and be discharged from the Tulsa Police Department;

c) A preliminary and permanent injunction ordering the Tulsa Police Department to obtain, and use "body cams" on all on-duty Police Personnel, and in-car camera systems for all Police vehicles used in transporting detainees;

d) Punitive Damages in the amount of $670,000.00 from each Defendant, totaling $2,010,000.00 in Punitive damages;

e) A Jury trial on all issues triable by Jury;

f) Any additional relief this Court deems just, proper, and equitable.

(*Id.* at 8-9).

As stated above, Defendants Jordan, Bell, and Phelps filed a motion to dismiss (Doc. 23). The Court granted the motion in part, denied the motion in part, and notified the parties that the motion to dismiss would be treated as a motion for summary judgment (Doc. 31). The only claim

before the Court on summary judgment is Plaintiff's claim of excessive use of force arising under the Fourth Amendment.

## *MATERIAL, UNDISPUTED FACTS*

1) On the night of April 29, 2013, Defendant Bell arrested Plaintiff for domestic violence (Doc. 2 at 3; Doc. 23 at 2).

2) Defendant Bell proceeded to transport Plaintiff in his patrol car (Doc. 2 at 3; Doc. 23 at 2).

3) Plaintiff's patrol car was not a "caged vehicle" (Doc. 32-1 at 2).

4) While transporting Plaintiff to DLM, Defendant Bell struck Plaintiff in the face several times with a closed fist (Doc. 2 at 3; Doc. 23 at 2).

5) Over the radio, Defendant Bell requested that an officer whose patrol vehicle was equipped with a cage meet him at the 2000 block of Admiral Place (Doc. 21 at 7; Doc. 38 at 73).

6) Plaintiff can be heard in the background yelling "[m]otherfucker hit me in the fucking face" (Doc. 21 at 7; Doc. 38 at 73).

7) Defendant Bell stopped his patrol car, removed Plaintiff from the vehicle, and put him on the ground (Doc. 2 at 3; Doc. 23 at 3; *see* Doc. 21 at 9; Doc. 38 at 73).

8) Additional officers responded to Defendant Bell's position, and another officer transported Plaintiff to DLM (Doc. 2 at 4; Doc. 23 at 3).

## *ANALYSIS*

**A. Standards**

    **1. Summary Judgment Standard**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted). "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Durham v. Xerox Corp.*, 18 F.3d 836, 838-39 (10th Cir. 1994) (internal quotation marks omitted).

### 2. Qualified Immunity

Defendants claim that they are entitled to qualified immunity. The Tenth Circuit has "recognized that the reasonableness inquiry in excessive force cases overlaps with the qualified immunity question," as both require courts to apply a reasonableness standard. *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citation omitted). As a result, the defense of qualified immunity is "of less value when raised in defense of an excessive force claim." *Id.* (citation omitted). A court may not grant summary judgment on a claim of excessive force brought under § 1983 where "*any* genuine issue of material fact remains – regardless of whether the potential grant would arise from qualified immunity or from a showing that the officer merely had not committed a constitutional violation." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002) (original emphasis) (citation omitted). "Where a disputed issue of material fact remains, that ends the matter for summary judgment," and the court will not consider whether an officer's actions were objectively reasonable. *Id.* at 1315.

4

### 3. Excessive Use of Force (Fourth Amendment)

The Fourth Amendment standard governing excessive force claims is well settled. "[L]aw enforcement officers must be 'objectively reasonable' in their searches and seizures." *Dixon v. Richer*, 922 F.2d 1456, 1461 (10th Cir. 1991). According to the Supreme Court,

> [d]etermining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham v. Connor*, 490 U.S. 386, 396 (1989) (alterations, citations, and internal quotation marks omitted). A court "must assess reasonableness from the perspective of a reasonable officer on the scene, 'rather than with the 20/20 vision of hindsight,' and consider that 'police officers . . . make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force necessary in a particular situation.'" *Blossom v. Yarbrough*, 429 F.3d 963, 967 (10th Cir. 2005) (quoting *Graham*, 490 U.S. at 396-97). To evaluate excessive force, the Court views the facts from the perspective of the officer. *See Graham*, 490 U.S. at 396-97. The focus of the inquiry is on the circumstances as they existed at the moment force was used. *Id.* In evaluating an excessive force claim, courts are to consider the totality of the circumstances. *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) (citation omitted).

### B. Excessive Use of Force Allegations

Plaintiff alleges that, on April 29, 2013, Defendant Bell used excessive force against him while transporting him to DLM (*see* Doc. 2). The Court has liberally construed Plaintiff's complaint

5

to state a claim for excessive use of force under the Fourth Amendment (Doc. 31). In response to Plaintiff's complaint, Defendants Jordan, Bell, and Phelps assert that Defendants did not violate Plaintiff's constitutional rights and are entitled to qualified immunity (Doc. 23).

### 1. Individual Capacity

#### a. Defendant Bell

##### i. Constitutional Violation

It is undisputed that Defendant Bell arrested Plaintiff on April 29, 2013, pursuant to a complaint of domestic violence. Plaintiff's and Defendants' versions of the events that followed the arrest differ significantly. According to Plaintiff, Defendant Bell placed him in the backseat of his patrol car, and,

> [d]uring transport to Booking, Officer Bell pulled his Police vehicle over, and moved me from the backseat to the front seat, and fastened me in with a seatbelt. Officer Bell told me I was a "woman beater," because I had previously been arrested for domestic violence. I stated to Officer Bell "you don't know what you're talking about." At this point, Officer Bell began striking me with a closed fist, three to four times in my mouth. My lip was bleeding, and I stated to Officer Bell "it must make you feel like a man to hit another man in handcuffs." At this point Officer Bell struck me again with a closed fist in my eye.

(Doc. 2 at 3). Plaintiff further alleges that Defendant Bell then removed him from the patrol car, "slamming me onto the ground" and "twisted my ankle with his hand" (*id.* at 3). In his motion for summary judgment, Defendant Bell does not specifically address those accusations, but – during Plaintiff's preliminary hearing, in Tulsa County District Court, Case No. CF-2013-2129 – Defendant Bell testified that he "put him on the ground . . . forcefully" (Doc. 36 at 21). Plaintiff provides affidavits from his mother, Minnie Hawkins, and his girlfriend, Tasha Garland, stating that, after arresting Plaintiff, Defendant Bell placed Plaintiff in the back seat of his patrol vehicle and not in the front seat (*id.* at 10-12).

In contrast, Officer Bell avers, in pertinent part, that:

14. Immediately after leaving the scene during transport Plaintiff became angry and began kicking the windshield and computer terminal of the patrol car.

15. I gave Plaintiff several commands to stop but he continued to kick the interior of my patrol car and cursed and yelled at me.

16. I was unable to pull over due to traffic on the roadway.

17. Plaintiff then turned sideways in the front passenger seat and despite his hands being handcuffed behind him began kicking the steering wheel of my patrol car as I drove forcing the vehicle to swerve into traffic nearly causing us to collide with another vehicle.

18. I believed that Plaintiff was trying to cause a motor vehicle accident and that his intent was to cause me and potentially other citizens driving on the roadway harm.

19. In defense of myself and other citizens on the roadway, I used a closed fist in a hammer type motion to strike Plaintiff twice in the face.

20. The two quick strikes provided me enough time to activate the patrol car's emergency lighting equipment enabling me to stop the vehicle in the middle of the roadway at 2000 E. Admiral Place; the patrol car's position in the roadway still presented a road hazard.

21. Meanwhile, Plaintiff continued kicking the steering wheel and then began kicking at me making it impossible for me to unlatch my seatbelt and exit my patrol car.

22. Plaintiff continued trying to kick me in the face and upper body by using both legs in a front kicking motion while using the front passenger door for leverage.

23. I blocked several kicks but he managed to kick me at least two times in the arms.

24. During his continued assault and battery upon me, I blocked several more kicks before I could strike Plaintiff in the face two more times causing him to stop his attack.

25. After that I was able to get his legs off the steering wheel and back into the front passenger floor board.

26. Plaintiff then began spitting all over the inside of my patrol car including the dash, windows and windshield.

27. He also spit on my right hand and yelled, "Fuck you! You Fucking Cracker!"

28. It took me several minutes to get Plaintiff under control and out of the patrol car where it was safer to control his violent behavior.

29. At that point I was able to radio call for assistance so that other officers could help me control Plaintiff and I requested a caged patrol car so Plaintiff could be safely transported.

30. I also requested that one of my fellow officers bring a spit hood since Plaintiff had spit all over the inside of my patrol car and on me.

(Doc. 32-1 at 2-4).

In support of their motion for summary judgment, Defendants provide an affidavit from Sergeant Michael Parsons (*see* Doc. 32-2). There, Sgt. Parsons states that:

5. Upon arriving I observed Officer Bell's patrol car in the roadway; Plaintiff was on the ground on his stomach with Officer Bell kneeling over him in order to control the physically combative Plaintiff.

6. While at the scene I observed several footprints from Plaintiff's shoes on Officer Bell's uniform and on the dash board, windshield and interior of the front driver and front passenger compartment of Officer Bell's patrol car.

(Doc. 32-2 at 1). Defendants also provided dash cam footage from Officer Aaron Slay's patrol vehicle (*see* Doc. 21 at 11). As Officer Slay approached the scene, Defendant Bell's vehicle was stopped in the far right lane of a one way street (*id.*). Plaintiff was lying on the ground, and Defendant Bell appeared to be kneeling over Plaintiff (*id.*). At that point, because Plaintiff was restrained, he was not physically resisting or being physically combative (*id.*). The video showed officers placing Plaintiff in Officer Slay's patrol car, and the video showed the ride from the scene of the events to DLM (*id.*). Defendants did not provide the Court with video from Defendant Bell's vehicle or from any of the other officers that were present.

8

To grant summary judgment, there must be no genuine dispute as to any material facts. The Court cannot grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Durham*, 18 F.3d at 838-39. Although on summary judgment the Court "view[s] the evidence in the light most favorable to the opposing party," *see Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (internal quotation marks omitted), "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "The standard is a very difficult one to satisfy" and applies in "rare, exceptional case[s]," *Cordero v. Froats*, 613 F. App'x 768, 769 (10th Cir. 2015) (unpublished)[1]; *see e.g. Rhoads v. Miller*, 352 F. App'x 289, 291-92 (10th Cir. 2009) (unpublished) (affirming denial of summary judgment where "there is no videotape or similar evidence in the record to blatantly contradict [the Plaintiff's] testimony. There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury." (footnote and citations omitted)); *Starr v. QuickTrip Corp.*, 2016 WL 3884800, at * 3 (10th Cir. July 13, 2016) (unpublished) (noting that "a plaintiff's testimony alone may be enough" to establish a genuine issue for trial and that "the conflict between [Plaintiff's] account and the personnel manager's does not render [Plaintiff's] testimony so 'blatantly contradicted by the record . . . that no reasonable jury could believe it.' It merely presents a conflict in the evidence for the jury to resolve." (citations omitted)).

---

[1] This and other unpublished opinions are not precedential but are cited for their persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Plaintiff's version of what took place in Defendant Bell's patrol car is in direct opposition to Defendants' version of what took place in Defendant Bell's patrol car, and the two cannot be reconciled. While Defendants present evidence in support of their motion for summary judgment, the evidence is not such that the Court can say Plaintiff's version of events is blatantly contradicted by the record. Defendant Bell and Plaintiff both provide statements attesting to their version of the events, and the Court does not determine the credibility of either statement on summary judgment. *See Rhoads*, 352 F. App'x at 292 ("The jurors may decide not to credit [Plaintiff's] testimony, but that is their prerogative, not ours."); *Starr*, 2016 WL 3884800, at *3 ("[T]he conflict between [Plaintiff's] account and the personnel manager's does not render [Plaintiff's] testimony so 'blatantly contradicted by the record . . . that no reasonable jury could believe it.'"(citation omitted)). Defendants also provide an affidavit from Sgt. Pearson that adds support for Defendant Bell's version of events (Doc. 32-2). Even so, it is not enough to merely present "other witnesses' testimony to oppose [Plaintiff's] version of the facts." *Rhoads*, 352 F. App'x at 291. Because there are disputed issues of material fact, the Court "may not move on to determine whether an officer's actions were objectively reasonable." *Olsen*, 312 F.3d at 1315 (internal quotation marks omitted). Hence, Defendant Bell's claim of qualified immunity and motion for summary judgment are denied.

### ii. Punitive Damages

In their motion for summary judgment, Defendants aver that "Plaintiff fails to plead sufficient facts that would render Defendants subject to punitive damages" (Doc. 23 at 16). For the reasons discussed above, a reasonable jury could find that Defendant Bell intentionally and maliciously struck Plaintiff in the face multiple times with a closed fist. Therefore, the Court denies Defendant Bell's motion for summary judgment on Plaintiff's claim for punitive damages.

### b.     Defendant Jordan

Plaintiff alleges that Defendant Jordan "was made aware of these allegations of Police brutality and investigator bias, and showed deliberate indifference by not only ignoring the issues at hand, but defending [Defendant Bell's] actions by stating that . . . 'the actions of Officer Bell were Justified'" (Doc. 2 at 6).[2]  The Court liberally construes Plaintiff's complaint to allege a claim of failure to supervise against Defendant Jordan.  The Tenth Circuit treats allegations of failure to supervise the same as failure-to-train claims.  *Whitewater v. Goss*, 192 F. App'x. 794, 797 (10th Cir. 2006) (unpublished); *Schepp v. Fremont County, Wyo.*, 900 F.2d 1448, 1454 (10th Cir. 1990); *Meade v. Grubbs*, 841 F.2d 1512, 1527-28 (10th Cir. 1988).  To withstand summary judgment on this claim, Plaintiff must provide evidence of a failure to supervise, which amounts to deliberate indifference to the federal rights of persons with whom the Tulsa Police Department officers come into contact, and that there is a direct causal link between the constitutional deprivation and the inadequate supervision.  *See Whitewater*, 192 F. App'x at 797; *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003) (similar elements on failure to train); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

Even viewing the facts presented in the summary judgment record in the light most favorable to Plaintiff, Plaintiff fails to provide any evidence or argument to support a claim either that Defendant Jordan was deliberately indifferent to Plaintiff's constitutional rights or that there is a direct causal link between Defendant Bell's alleged excessive use of force and any inadequate supervision by Defendant Jordan.  After the incident, the Tulsa Police Department conducted an

---

[2] In a prior order (Doc. 31), the Court dismissed Plaintiff's claim that he was denied equal protection of the law because of a biased internal affairs investigation for failure to state a claim.

internal affairs investigation into Defendant Bell's conduct that night (*see* Doc. 37 at 17). In the course of the investigation, Defendant Jordan recommended that Defendant Bell be exonerated (*id.*). Plaintiff makes no argument and presents no evidence demonstrating that Defendant Jordan's conduct or recommendation constituted deliberate indifference or was linked to any alleged constitutional deprivation. Therefore, the Court grants Defendant Jordan's motion for summary judgment as to Plaintiff's individual capacity claims.

### c. Defendant Phelps

Plaintiff alleges that Defendant Phelps "investigated the complaints against Defendant Bell, not completing the investigation properly, and showing bias" (Doc. 2 at 2).[3] Plaintiff does not make additional allegations or provide additional evidence to demonstrate how Defendant Phelps was connected to the events of April 29, 2013, other than his involvement in the internal affairs investigation after the fact. In the absence of allegations and evidence showing a connection between Defendant Phelps and the events that took place in Defendant Bell's patrol car, Plaintiff has not shown that Defendant Phelps was involved in any alleged excessive use of force against him. Therefore, the Court grants Defendant Phelps' motion for summary judgment as to Plaintiff's individual capacity claims.

### 2. Official Capacity

The Court liberally construes Plaintiff's complaint to bring an official capacity claim against Defendants Jordan, Bell, and Phelps. A claim against Defendants in their official capacity "is essentially another way of pleading an action against the county or municipality" they represent.

---

[3] As stated in footnote 2, the Court previously dismissed Plaintiff's claim that the internal affairs investigation was biased.

*Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). Thus, the Court must apply municipal liability standards in assessing Plaintiff's official capacity claim.

"A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). A municipality may be held liable "when the enforcement of their policies or customs by their employees causes a deprivation of a person's federally protected rights." *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010). A municipal policy or custom can include formal regulations or policies; informal customs amounting to widespread practices that are so permanent as to constitute a custom or usage; decisions by final policymakers; ratification of employees' decisions by a final policymaker; and failure to train or supervise, so long as failure results from deliberate indifference. *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010).

A plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Dodds*, 614 F.3d at 1202 (internal quotation marks omitted). A plaintiff does so by identifying a specific deficiency that was so obvious and closely related to his injury that it "might fairly be said that the official policy or custom was both deliberately indifferent to his constitutional rights and the moving force behind his injury." *Porro*, 624 F.3d at 1328.

Plaintiff alleges that:

> Defendant [Jordan] was acting [under] the color of state law within the meaning of § 1983. Defendant ignored complaints by citizens of the City of Tulsa in regards to the actions, and investigation of Defendant Bell, and allowed Defendant Bell to continue working as a Police Officer. As such, he acted in conformity with his official capacity as Police Chief.

> . . . .
>
> Defendant [Bell] was acting [under] the color of state law within the meaning of § 1983. Defendant arrested the plaintiff while on duty [as] a City of Tulsa Police Officer, after which, and while in his custody, Defendant assaulted Plaintiff. As such, he acted in conformity with his official capacity as a Police Officer.
>
> . . . .
>
> Defendant [Phelps] was acting [under] the color of state law within the meaning of § 1983. Defendant Phelps investigated the complaints against Defendant Bell, not completing the investigation properly, and showing bias. As such, he acted in conformity with his official capacity as an Internal Affairs Investigator.

(Doc. 2 at 1-2). Plaintiff does not specify any policy, custom, action by a policymaker, or failure to train or supervise that caused a deprivation of Plaintiff's federal rights. Therefore, Plaintiff cannot demonstrate a direct causal link between any municipal action and Defendant Bell's alleged excessive use of force. The Court grants Defendants' motion for summary judgment as to Plaintiff's official capacity claim.

## *CONCLUSION*

The Court grants Defendants' motion for summary judgment in part and denies it in part. The Court grants Defendants' motion for summary judgment as to Plaintiff's claims against Defendants in their official capacities and Plaintiff's claims against Defendants Jordan and Phelps in their individual capacities. Defendants Jordan and Phelps are dismissed from this action. The Court denies Defendants' motion for summary judgment as to Plaintiff's claim against Defendant Bell in his individual capacity and against Defendant Bell for punitive damages.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment (Doc. 23) is **granted** as to Plaintiff's official capacity claims and Plaintiff's claims against Defendants Jordan and Phelps.

2. Defendants Jordan and Phelps are **dismissed without prejudice** from this action.

3. Defendants' motion for summary judgment (Doc. 23) is **denied** as to Plaintiff's individual capacity claim and claim for punitive damages against Defendant Bell.

ORDERED THIS 31st day of August, 2016.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE